IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-4056-CR-C-SRB |
| | ) | |
| | ) | |
| BILLY RAY BRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

On November 13, 2014, defendant Billy Ray Bradley filed a motion to suppress evidence.[1] (Doc. 23). Defendant's motion seeks the Court to order the suppression of all evidence seized from his truck and person. The Government has filed suggestions in opposition. A hearing was held on the motion on January 12, 2015.

**Facts**

On August 26, 2014, at approximately 9:13 p.m., Benton County Sherriff's Deputy, Andrew Ehlers, was advised by dispatch that a maroon Ford truck was reported driving in a careless and imprudent manner on Missouri Highway 7 near the "mile long bridge." According to the complaint, the truck was driving all over the roadway. Deputy Ehlers, a canine (K-9) handler who had his dog in his patrol vehicle, was already in the area, and got behind the Red Ford F-150 that he believed fit the description of the complaint. Deputy Ehlers observed the truck cross the center line twice and cross the fog line once. Deputy Ehlers conducted a traffic stop of the truck at the intersection of Missouri Highway 7 and Walking Horse Street in Warsaw, Benton County, Missouri.

Deputy Ehlers made contact with the driver, Billy Ray Bradley (the Defendant). Nicole Plott was seated in the passenger side of the truck, and two infant children were seated in the back. Deputy Ehlers advised the Defendant of the reason for the stop. In response Defendant stated that he and Plott were tending to their toddlers in the back seat while driving down the

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

roadway. Deputy Ehlers requested the Defendant's drivers' license and proof of insurance and requested identification from Plott. According to Deputy Ehlers, the Defendant appeared nervous and fidgety, and provided a driver's license and a health insurance card, and Plott provided her driver's license. Deputy Ehlers advised the Defendant he would only be giving him a warning for the lane violations and then walked back to his patrol vehicle in order to check Defendant and Pratt's information with the police dispatch.

Upon his return to his patrol car, Deputy Ehlers contacted Central Dispatch between approximately 9:20 and 9:23 p.m. and requested a check on the Defendant and Plott. Central Dispatch advised that both subjects were valid, but that the Defendant was on probation for possession of a controlled substance. Officer Ehlers also filled out the required racial profiling form while in his patrol vehicle. Deputy Ehlers returned to Defendant's vehicle, told Defendant he was not in any trouble, and then asked the defendant if he would step to the rear of his truck. The Defendant agreed and accompanied Deputy Ehlers to the rear of the truck.

Once at the rear of Defendant's truck, Deputy Ehlers again advised Defendant that he was only receiving a verbal warning on the traffic violations and returned to Defendant his driver's license. Deputy Ehlers then asked Defendant if he had anything illegal on his person or in his truck. The Defendant answered no. Deputy Ehlers' asked Defendant if he could search his person and Defendant agreed. Nothing illegal was found on Defendant's person. Deputy Ehlers then asked Defendant again if there was anything illegal in his truck. Deputy Ehlers reported that at this point Defendant's nervous behavior began to escalate and Defendant began looking nervously back at his truck. Deputy Ehlers noted that Defendant was trembling, fidgeting, and moving around a lot. Deputy Ehlers informed the Defendant that if he had marijuana or drug paraphernalia in his truck and it was just a misdemeanor, then Defendant would be issued a citation and released. Deputy Ehlers then asked the Defendant whether his probation conditions contained a provision that he consent to a search of his truck and the Defendant indicated he did not know. Deputy Ehlers advised Defendant that he was going to walk his drug canine around Defendant's vehicle. The Defendant stated that he had a "key box" in the door of his truck that he would go and retrieve. Deputy Ehlers asked the Defendant to wait and asked him what was in the key box. The defendant responded it contained a small amount of methamphetamine. Deputy Ehlers advised Defendant he would retrieve the key box. As Deputy Ehlers walked toward the Defendant's truck, Defendant stated that Plott did not know that illegal

2

narcotics were present in the truck and that they belonged to him.  Deputy Ehlers then requested that Deputy Shawn Plain, who had just recently arrived on the scene, place the Defendant into wrist restraints, and advised the Defendant he was under arrest.  The arrest occurred at approximately 9:33 p.m.  Deputy Ehlers then requested consent to search the truck.  The Defendant consented and during the search Deputy Ehlers recovered a glass pipe which contained white crystal substance and burn marks from the console of the truck.  Deputy Ehlers also recovered a black glove that contained four stacks of one-hundred dollar bills totaling $4,000.  Deputy Ehlers asked the defendant if the money belonged to him, to which, Defendant responded by stuttering and eventually responding yes.

Deputy Ehlers returned to the truck and continued the search.  He observed a knife between the driver's seat and the center console and while removing the knife observed a pink infant top.  Upon removing the infant top, Deputy Ehlers felt something "crunchy" inside it.  He unfolded the tank top and observed a sandwich baggy that contained a while crystal substance later determined to be methamphetamine.  Deputy Ehlers instructed Deputy Plain to place the Defendant in his patrol car.

Deputy Ehlers approached the Defendant to advise what had been recovered.  Before Deputy Ehlers could speak, the Defendant stated that everything in the truck belonged to him.  Deputy Ehlers advised the defendant he would be further questioned at the Sherriff's Department.  Deputy Ehlers testified that at the Sheriff's Department Defendant was given his Miranda Warnings.[2]  During a further search of the truck, firearms and ammunition were recovered.

## Discussion

Defendant argues that the search of his vehicle was the product of an unlawful detention in violation of the Fourth Amendment.  Specifically, Defendant argues that when Deputy Ehlers asked him to step to the rear of his truck, this unlawfully extended the initial lawful traffic stop.  Defendant further argues that he was never advised by Deputy Ehlers that he was free to leave prior to Deputy Ehlers asking him questions unrelated to the traffic stop about whether Defendant had anything illegal on his person or in his truck.  Defendant argues that Deputy

---

[2] Officer Ehlers also testified that Officer Plain may have also given Defendant his Miranda Warnings roadside.

Ehlers did not have a reasonable, articulable suspicion to support detaining him beyond the initial traffic stop.

The Government argues that Defendant's Fourth Amendment rights were not violated. The Government asserts that the request by Deputy Ehlers that defendant step to rear of his vehicle was a part of the initial lawful traffic stop. The Government further asserts that the conversation that occurred after Deputy Ehlers returned Defendant's driver's license and advised him he was only giving him a warning, was a consensual encounter. As a consensual encounter the Government argues that Deputy Ehlers was not required to have reasonable suspicion that criminal activity was afoot. Further, the Government argues that during the consensual encounter, Defendant's escalating nervous behavior in response to Deputy Ehlers' questions as to whether he had anything illegal in his truck, support the reasonable suspicion of Deputy Ehler that criminal activity was afoot, and therefore, supported Deputy Ehlers' statement to the Defendant that he intended to allow his canine to do a canine sniff of Defendant's truck. Finally, the Government argues that Defendant's offering of a "key box" in his vehicle containing methamphetamine in response to Deputy Ehlers' question whether he had anything illegal in his vehicle supports its argument that Deputy Ehlers had probable cause to search Defendant's truck and retrieve the key box.

**The Traffic Stop**

The Fourth Amendment "guarantees the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Whren v. United States, 517 U.S. 806, 809-10 (1996). "Temporary detention of individuals during the stop on an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." Id. at 809-10. Therefore, as a general matter, a traffic stop must be reasonable, that is, the police must have probable cause to believe that a traffic violation has occurred. Id.

Here, the report from dispatch about a maroon Ford F-150 Truck that was driving carelessly and imprudently on MO Hwy 7 at the "mile long bridge," in conjunction with the additional traffic violations personally observed by Deputy Ehlers provided probable cause for Deputy Ehlers to stop Defendant's vehicle for a traffic violation.

As to the detention of the Defendant for the duration of the traffic stop, the law provides that such detention is reasonable until the purpose of the traffic stop has been completed.

4

> [I]f a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed. Occupants . . . may be detained while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation. These tasks can include a computerized check of the vehicle's registration and the driver's license and criminal history, as well as the preparation of a citation or warning. The officer may also ask questions about the occupant's itinerary. However, once an officer finishes the tasks associated with a traffic stop, the purpose of the traffic stop is complete and further detention . . . would be unreasonable unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention. Whether a detention is reasonable is a fact-intensive question which is measured in objective terms by examining the totality of the circumstances.

United States v. Gunnell, 775 F.3d 1079, 1083-84 (8th Cir. 2015) (citing United States v. Ovando-Garzo, 752 F.3d 1161, 1163-64 (8th Cir. 2014)). Following Deputy Ehlers' computerized check with Central Dispatch regarding Defendant's driver's license information and proof of insurance, Deputy Ehlers requested that Defendant step to the rear of the truck during the process of the traffic stop. Officer Ehlers was still completing the purpose of the traffic stop when he requested Defendant step to the rear of his truck. It was at the rear of the truck that Officer Ehlers explained to Defendant that he was only going to be giving him a warning, and thereafter, returned Defendant's driver's license. The purpose of the traffic stop was not complete prior to this point. Defendant's challenge that Deputy Ehlers had no reasonable basis to ask him to step to the rear of his truck, and therefore, unreasonably delayed the traffic stop and seized him in violation of his Fourth Amendment rights is without merit. "An officer making a traffic stop does not violate the Fourth Amendment by . . . requesting the driver to step to the patrol car." United States v. Poulack, 236 F.3d 932, 935-36 (8th Cir. 2001). See also Maryland v. Wilson, 519 U.S. 408, 412-16 (1997) (additional intrusion of asking the driver or passenger of a vehicle, validly stopped for a traffic infraction, to step outside the vehicle is de minimus, and therefore, does not violate the Fourth Amendment's proscription of unreasonable seizures). The traffic stop of Defendant's vehicle, including the request that Defendant step to the rear of his truck, was not an unconstitutionally prolonged traffic stop. The initial stop by Officer Ehlers occurred shortly after Deputy Ehlers received the initial report of an erratic driver on the "mile long bridge" on Hwy 7 at 9:13 p.m. Deputy Ehlers contracted Central Dispatch at approximately 9:20 to 9:23 p.m. Defendant was placed under arrest at approximately

5

9:33 p.m. The Court finds that this is not an unreasonably prolonged amount of time to conduct a traffic stop.

**Consensual Encounter**

After giving Defendant a warning for the traffic violations and returning to Defendant his driver's license, Deputy Ehlers asked Defendant if he had anything illegal on his person or in his truck. Defendant argues that this question was the beginning of an illegal detention in violation of his Fourth Amendment rights.

The issuance of the warning to Defendant and the return of Defendant's driver's license ended the traffic stop. United States v. Garcia, 613 F.3d 749, 753 (8th Cir. 2010) ("Once an officer issues a warning, the traffic stop is over."). Defendant had everything he needed to proceed with his journey. There were no actions by Deputy Ehlers supporting Defendant's argument that he believed he was not free to leave. See United States v. Grant, 696 F.3d 780, 784-86 (8th Cir. 2012) (a person is considered to be seized when considering all the circumstances "a reasonable person would have believed that he was not free to leave."). There is no evidence to suggest that the exchange between Defendant and Deputy Ehlers contained any conduct that could be construed as threatening or coercive. Deputy Ehlers did not display a weapon; did not physically touch Defendant;[3] or use language or tone of voice that indicated that Defendant's answering of questions or request for consent to search was compelled. Deputy Ehlers also testified that if Defendant had requested to leave he would have allowed him to do so. As to the additional officer that had arrived on the scene at about the time Officer Ehlers was completing the traffic stop, this officer remained standing to the side and was not involved in the exchange between Deputy Ehlers and the Defendant. See Grant, 696 F.3d at 784-85 (Discussing what objective circumstances support a finding that a seizure occurred). The facts present here support a determination that Defendant was no longer seized within the meaning of the Fourth Amendment after Deputy Ehlers gave Defendant a warning and returned his driver's license. The fact that Defendant was not told specifically he was free to leave does not mean he was detained. The Supreme Court has specifically held that "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." I.N.S. v. Delgado, 466 U.S.

---

[3] After requesting consent to search Defendant's person, Deputy Ehlers did briefly physically touch Defendant in order to conduct a search of his person.

6

210, 216 (1984). The encounter after Deputy Ehlers issued a warning to Defendant for his traffic violations and returned to Defendant his driver's license was a consensual encounter and was not a seizure, therefore, the Fourth Amendment is not implicated.

As part of the consensual encounter, Officer Ehlers was permitted to ask questions unrelated to the traffic stop and seek consent to search Defendant's person and vehicle. Garcia, 613 F.3d at 753. Accordingly, the court need not consider whether Deputy Ehlers also had reasonable suspicion to prolong the traffic stop. Id. See also United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002) (if encounter is consensual, then even without reasonable suspicion, officer may ask questions unrelated to stop and seek consent to search the vehicle). As part of a consensual encounter, an officer, with no basis for suspecting a particular individual, may generally ask questions of that individual, including a request for consent to search, provided the officer does not convey a message that compliance with the request is required. United States v. White, 81 F.3d 775, 778 (8th Cir. 1996). Here during the consensual encounter between Deputy Ehlers and the Defendant, Deputy Ehlers did ask defendant questions regarding illegal items he may have on his person or in his truck, as well as requesting consent to search Defendant's person. Neither these questions, nor the search of Defendant's person to which Defendant acquiesced, violated Defendant's constitutional rights. Defendant was not detained and this was a consensual encounter during which Defendant gave Deputy Ehlers' consent to search his person.

Neither was Defendant detained when Deputy Ehlers stated that he was going to walk his canine around Defendant's truck. Deputy Ehlers' statement did not change the consensual encounter to a detention.[4] There is no evidence to suggest that Defendant's ability to leave was conditioned on the canine sniff. See Grant, 696 F.3d at 785-86. The Court finds that a reasonable person in Defendant's position would not believe that compliance with Deputy Ehlers' wishes was compelled. Additionally, the Court finds that law enforcement officers are not required to have reasonable suspicion that a vehicle traveling on or stopped along a public roadway is transporting contraband before subjecting it to a canine sniff. United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 647 (8th Cir. 1999). A canine sniff takes very little time and is so unintrusive that it is not considered a search. Id. "[A] canine sniff of the exterior of personal property in a public location is so limited both in manner in which the information is

---

[4] Ultimately Deputy Ehlers did not conduct a canine sniff of Defendant's truck.

7

obtained and in the content of the information revealed by the procedure that it does not constitute a search within the meaning of the Fourth Amendment." Id.

The Court finds the entire circumstances following the valid traffic stop of Defendant's vehicle, show the encounter between Defendant and Deputy Ehlers to be consensual in nature. A reasonable person in Defendant's position would have understood that he could decline to answer Officer Ehlers' questions and requests, including the consent to search and canine sniff.

**Probable Cause**

During the consensual encounter Deputy Ehlers testified that he noticed Defendant became increasingly nervous when asked about whether he had any illegal items on his person or in his truck. When specifically asked about possible illegal items in his truck, Deputy Ehlers noticed Defendant was continually and nervously looking back at his truck while speaking with him. This nervous behavior in conjunction with the information provided previously by Central Dispatch as to Defendant's probation status on drug charges, and Defendant's statement in response to a canine sniff around his truck that he had a "key box" in his truck that he would retrieve, supported Deputy Ehlers probable cause to believe that criminal activity was afoot. This probable cause supported Deputy Ehlers actions of detaining the Defendant. Specifically, Deputy Ehlers had probable cause to advise the Defendant to wait so Defendant could identify what was in the key box, and Deputy Ehlers could be the one to retrieve the key box from Defendant's truck. Deputy Ehlers subsequent retrieval of the key box from Defendant's truck was a search supported by this same probable cause, as well as by Defendant identifying to Deputy Ehlers prior to retrieval of the key box, that it contained a small amount of methamphetamine.

Upon retrieval of the key box, Defendant's assertions that the methamphetamine in the box belonged to him, rather than his female passenger Plott, further bolstered the probable cause already established by Deputy Ehlers. Deputy Ehlers had probable cause to arrest Defendant and to further search Defendant's truck, which he did.[5]

---

[5] Deputy Ehlers testified that even when he has probable cause to search, his practice is to request consent to search. The fact that Deputy Ehlers requested consent to search Defendant's truck does not negate the fact that Deputy Ehlers had probable cause to search the truck regardless of consent.

8

**Conclusion**

Deputy Ehlers' actions in this case were consistent with a lawful traffic stop, a subsequent consensual encounter and finally probable cause to arrest defendant and search his vehicle. Defendant's Fourth Amendment rights were not violated. It is therefore,

RECOMMENDED that Defendant's motion to suppress the evidence should be denied. (Doc. 23)

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 11th day of March, 2015, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge